# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 226 | **DATE** | 10/17/2003 |
| **CASE TITLE** | Arelene Coles vs. LaSalle Partners Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Because genuine issues of material fact preclude summary judgment for either party, both motions are denied. (16-1, 23-1) This action is set for a status hearing at 8:45 a.m. October 28, 2003 to discuss timing and procedures for trial of the case.
(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | OCT 20 2003 | |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 10/17/2003 date mailed notice | |
| SN | courtroom deputy's initials | SN mailing deputy initials | |

Date/time received in central Clerk's Office

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ARLENE COLES,                )
                             )
        Plaintiff,            )
                             )
v.                           )    No. 03 C 226
                             )
LASALLE PARTNERS INCORPORATED )
DISABILITY PLAN, et al.,     )
                             )
        Defendants.           )

**DOCKETED**
**OCT 2 0 2003**

MEMORANDUM OPINION AND ORDER

Arlene Coles ("Coles") has sued her employer Jones Lang LaSalle ("LaSalle") and its insurance provider Life Insurance Company of North America ("LINA"), a CIGNA company, pursuant to ERISA (29 U.S.C. §§1001-1461)[1] to recover long term disability benefits potentially due to her under an employee disability plan ("Plan") established by LaSalle. Both parties have moved for summary judgment pursuant to Fed. R. Civ. P. ("Rule") 56 and have complied with this District Court's LR 56.1[2]. Because genuine

---

[1] ERISA provisions are cited "Section --," using the Title 29 numbering.

[2] LR 56.1 requires the submission of evidentiary statements and responses with the aim of highlighting which facts are disputed and which are not. This opinion cites to the initial LR 56.1 statements as "C. St. ¶--" and "L. St. ¶--" and to the responsive statements as "C. Resp. ¶--" and "L. Resp. ¶--." Where an assertion in either party's LR 56.1 statement is undisputed by its opponent, the opinion includes only a citation to the original statement. "C." and "L." designations are also used to refer to all other submissions by the parties. Citations to the joint record are designated by "R.--." For the Facts section of this opinion, parallel citations to that record are included only where they materially expand upon the parties' Rule 56.1 submissions. But to avoid confusion as to which facts have

issues of material fact preclude summary judgment for either party, both motions are denied.[3]

## Facts

Coles began working as a Senior Tax Manager for LaSalle in October 2000. About September 14, 2001 she ceased working and applied for short term disability benefits (C. St. ¶13; L. St. ¶8). In her application Coles claimed to suffer from depression and anxiety, both of which were "exacerbated by work conditions" (L. St. ¶8, R. 365). After an initial denial LaSalle[4] approved Coles' claim, and she was then paid short term disability benefits through December 31, 2001 (L. St. ¶14).

By January 2002 Coles had not returned to work, and she applied for long term disability benefits (C. St. ¶12). That claim was denied on March 27, 2002 (C. St. ¶27)[5] after the

---

been disputed either in whole or in part, the rest of the opinion includes only "R.--" references.

[3] Coles alternatively encourages this Court to render judgment pursuant to Rule 52 if it finds a genuine issue of material fact. But as C. R. Mem. 1-2 acknowledges, LaSalle has not consented to such a procedure. In the absence of joint consent, Rule 52 is simply unavailable (cf. Kearney v. Standard Ins. Co., 175 F.3d 1084, 1095 (9th Cir. 1999)(en banc); Akhtar v. Cont'l Cas. Co., No. 01 C 7109, 2002 WL 500544, at *1 (N.D. Ill. April 1)).

[4] Technically LINA (not LaSalle) administered the entire claim evaluation procedure. But because all defendants submitted their materials collectively, all are referred to here as "LaSalle."

[5] Cole's Rule 56.1 statement inadvertently repeated the number "16" for two successive paragraphs. Because LaSalle's

2

opinions of Coles' internist Dr. Kolbaba, her treating psychiatrist Dr. Nutter and a counselor had been considered (R. 197-200).

Coles appealed the denial on May 18, 2002 (C. St. ¶28). As part of her appeal Coles underwent a neuropsychological evaluation, including a battery of tests conducted by independent psychologist Dr. Sweet (C. St. ¶29; L. St. ¶22). LaSalle also contracted with a psychiatrist, Dr. Abramson, to conduct a peer review of Dr. Sweet's report (C. St. ¶36; L. St. ¶30). Based on the new information provided by Drs. Sweet and Abramson in conjunction with the earlier information from Drs. Nutter and Kolbaba, LaSalle again denied Coles' claim on August 12, 2002 (C. St. ¶38).

Coles' second appeal on September 11, 2002 included rebuttal letters from Drs. Sweet and Nutter (C. St. ¶¶41, 49) as well as a notice from the Social Security Administration ("SSA") advising that her benefits had been approved based on a finding that she was disabled as of September 15, 2001 (C. St. ¶52). To review that appeal LaSalle contracted with still another psychiatrist, Dr. Pearlman (L. St. ¶38), who reviewed Coles' record and spoke with Drs. Nutter, Sweet and Kolbaba (L. St. ¶39). After considering the entire battery of doctors' opinions, LaSalle

---

response did not conform to that mistake, the numbers in the two documents after the first C. St. ¶16 do not correspond (e.g., L. Resp. ¶18 addresses C. St. ¶17).

again denied Coles' claim on November 8, 2002 (C. St. ¶55).

Finally, before bringing this action Coles again petitioned LaSalle on December 3, 2002 (C. St. ¶62). That submission included another rebuttal by Dr. Sweet questioning both the findings and the validity of Dr. Pearlman's report (L. St. ¶55; R. 61). When LaSalle did not alter its previous determination that Coles was not entitled to long term disability benefits under the Plan (L. St. ¶59), Coles filed suit pursuant to Section 1132(a)(1)(B).

## Summary Judgment Standard

Rule 56 allows for summary judgment where there is no genuine issue of material fact (Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986))--something that exists only if "a reasonable jury could render a verdict for the non-moving party" (Pugh v. City of Attica, 259 F.3d 619, 625 (7th Cir. 2001), quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). Each movant bears the burden on her or its Rule 56 motion of proving that there are no material factual disputes (Celotex, 477 U.S. at 322-23). In turn the court must "consider the evidentiary record in the light most favorable to the non-moving party...and draw all reasonable inferences in his favor" (Lesch v. Crown Cork & Seal Co., 282 F.3d 467, 471 (7th Cir. 2002)). Those requirements often present an insurmountable hurdle when applied to cross-motions for summary judgment (Tevlin

v. Metro. Water Reclamation Dist., 237 F.Supp.2d 895, 897 (N.D. Ill. 2002)).

## Standard of Review

Because the Plan is unquestionably an "employee welfare benefit plan" as defined in Section 1002(1)(A), Coles is entitled to seek judicial review of LaSalle's final decision here (L. St. ¶¶3-4). Such review is de novo unless the plan reserves discretion to the plan administrator to determine when benefits are due or to interpret the plan provisions (Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Herzberger v. Standard Ins. Co., 205 F.3d 327, 330 (7th Cir. 2000)). In the latter event the court examines the record only to see whether the plan administrator abused its discretion or was arbitrary and capricious in reaching its decision (Firestone Tire, 489 U.S. at 109-11; accord, Fritcher v. Health Care Serv. Corp., 301 F.3d 811, 816 n.4 (7th Cir. 2002), which notes that those two more lenient standards of review are interchangeable). For a plan to convey enough discretion to a plan administrator to trigger the more generous review, the plan "must contain language that... indicates with the requisite if minimum clarity that a discretionary determination is envisaged" (Herzberger, 205 F.3d at 331).

Here Plan at 3 informs claimants that to receive benefits:
> You must provide us, at your own expense, satisfactory proof of Disability before benefits will be paid.

5

That is exactly the type of language that Herzberger, id. rejected as inadequate to remove a plan from the presumption of de novo review.

Relatedly, Plan at 15 states:

The Plan Administrator[6] has authority to control and manage the operation and administration of the Plan. The Plan Administrator may terminate, suspend, withdraw or amend the Plan, in whole or in part, at any time, subject to the applicable provisions of the Policy.

Importantly, that list of activities as to which the Plan Administrator has "authority to control and manage" does not include Plan interpretation. Contrast Halpin v. Grainger, Inc., 962 F.2d 685, 688 (7th Cir. 1992)(emphasis added), which applied an arbitrary and capricious standard where the Plan Administrator had the power to "determine all questions arising in the administration, interpretation and operation of the Plan."

Moreover, the word "discretion" does not appear anywhere in the clause. Again contrast Quinn v. Non-Contributory Nat'l Long Term Disability Prog., 113 F.Supp. 2d 1216, 1221 (N.D. Ill. 2000), which employed an arbitrary and capricious standard where the plan administrator had the power to grant benefits when the determination was "based on medical evidence satisfactory to the Committee in its sole discretion." While neither Firestone Tire

---

[6] [Footnote by this Court] Although this is not essential to the determination that de novo review is proper, Plan at 15 specifies that while LINA conducts the claim evaluation process and substantively decides whether benefits are due under the Plan, LaSalle is designated as the Plan Administrator.

6

nor Herzberger specifically requires the use of the word "discretion," the omission of that term from the Plan's provision surely suggests that it does not meet the Firestone Tire standard (Herzberger, 205 F.3d at 331).[7]

## Analysis of the Rule 56 Motions

Coles' Rule 56 motion can be granted either (1) if the process LaSalle used to evaluate her claim was improper or (2) if no genuine issue of material fact bars a decision as a matter of law that LaSalle reached the wrong conclusion as to Coles' entitlement to benefits. In contrast, LaSalle's motion can be granted only if both (1) the process it used to evaluate Coles' claim is proper and (2) no genuine issue of material fact bars a decision as a matter of law that it reached the correct conclusion as to Coles' entitlement to benefits. As the ensuing discussion shows, a de novo review of the record reveals that neither party's motion can be granted, because even though the process LaSalle used to evaluate Coles' claim was proper, a

---

[7] Furthermore, the fact that "discretion" is explicitly granted to LaSalle elsewhere in the Plan (see Plan at 7) triggers the reasonable inference that the Plan's drafters made a purposeful decision to omit the word (and its resulting connotations) from the critical provision. Given the clear roadmap to arbitrary-and-capricious review marked out by Firestone Tire almost a decade and a half ago, no principled basis exists for rescuing any plan's drafters from the consequences of their failure to follow that path. Indeed, it is really irresponsible on the part of LaSalle's counsel to purport to find support for reading an arbitrary-and-capricious standard into the Plan under Firestone Tire and Herzberger (L. Mem. 8).

7

genuine issue of material fact remains as to LaSalle's ultimate conclusion that Coles is not entitled to benefits.

Claim Evaluation Process

First, Coles contends that LaSalle impermissibly failed to give greater weight to the opinions of her treating doctors than to the opinions of the non-examining consultant doctors.[8] But only last Term Black & Decker Disability Plan v. Nord, 123 S. Ct. 1965, 1967 (2003) explicitly held that mandatory deference to treating doctors is completely unwarranted. Nord, id. at 1971 recognizes that while the opinion of a treating physician may sometimes be entitled to deference based on the doctor's greater understanding of a claimant's condition, that is not always the case. And any extra deference makes "scant sense" when--as is the situation between Coles and Dr. Sweet--the doctor-patient relationship was brief (id.).

In addition, Coles' concern that the consulting doctors were biased in favor of the benefits provider because they were

---

[8] As an aside, Coles' assertion that Drs. Abramson and Pearlman violated the ethical guidelines of the American Academy of Psychiatry and the Law (attached to Coles' Memorandum) by not examining Coles personally is not only of dubious relevance but is also incorrect. Those guidelines do not bar consultation in the absence of personal examination. Instead their Section IV Commentary says that such consultation is acceptable in certain circumstances, so long as there is full disclosure of the lack of personal examination in any ensuing report. Because Dr. Abramson acknowledged that he performed only a "retrospective record review" and Dr. Pearlman said that he did not examine Coles himself (R. 154, 177), neither doctor violated the guidelines.

8

employed by LaSalle was addressed in Nord, id., and it was discarded there as balanced by the equally plausible notion that a treating doctor might be biased in favor of a claimant. When such possible biases cancel each other out, what remains is a blank credibility slate on which to determine which doctor's conclusions are correct--and that slate cannot of course be written on at the summary judgment stage.

Coles also contends that LaSalle did not adequately consider her favorable SSA disability determination. True enough, a SSA disability determination may generally be considered in deciding whether a claimant is disabled under a particular private plan's disability definition (Kirwan v. Marriott Corp., 10 F.3d 784, 790 n. 32 (11th Cir. 1994)). In some situations, for example where all other uncontradicted evidence is in accord with the ruling of the SSA, a failure to align a disability determination under an ERISA plan with an SSA ruling of disability could justify summary judgment in a plaintiff's favor (see, e.g., Ladd v. ITT Corp., 148 F.3d 753, 755-56 (7th Cir. 1998)). But in other situations, for example where all other uncontradicted evidence is inconsistent with the ruling of the SSA, summary judgment may be granted in a defendant's favor even where it has not considered the SSA determination at all (Madden v. ITT Long Term Disability Plan for Salaried Employees, 915 F.2d 1279, 1285 (9th Cir. 1990)).

Neither such a situation nor one having material similarity is presented by this case. Instead, where as here the evidence does not absolutely favor either side, an evaluation of LaSalle's decision about how much weight to give a SSA determination (if any) is more appropriately conducted during a factfinding trial than at the summary judgment stage.

Both arguments just discussed are waystations en route to Coles' overarching accusation that LaSalle did not weigh all available evidence. That accusation fails. On that score LaSalle must communicate specific reasons for its denial so that this Court has enough information to conduct a meaningful review of its decision (Section 1133(1); <u>Halpin</u>, 962 F.2d at 688-89). And LaSalle has done that by providing Coles with a series of denial letters detailing the findings of the evaluating doctors and how those findings relate to its denial of benefits to Coles (R. 197, 149, 081). While Coles might have liked more, the letters demonstrate that LaSalle has weighed the evidence by substantially complying with the specific-reasons requirement--at least enough to avoid summary judgment in Coles' favor on the fact-intensive inquiry (<u>Hackett v. Xerox Corp. Long-Term Disabilty Income Plan</u>, 315 F.3d 771, 775 (7th Cir. 2003); see also <u>Gallo v. Amoco Corp.</u>, 102 F.3d 918, 922 (7th Cir. 1996)(observing that while an administrator must give "specific reasons" for its denial, "that is not the same thing as the

reasoning behind the reasons") and Nord, 123 S. Ct. at 1970 (rejecting the imposition of a heightened burden of explanation on administrators who reject a treating doctor's opinion)).

Did LaSalle weigh the evidence? Yes. Did LaSalle weigh the evidence and come up with the correct answer? It cannot be said at this point--only a factfinder can decide. With LaSalle having provided the court with enough information to conduct an informed review, but with that review having ascertained that numerous factual disputes--examples of which are ticked off in the next section of this opinion--still remain, LaSalle's determination is inappropriate for summary judgment.

### LaSalle's Decision

In the end a congeries of factual determinations contributed to LaSalle's decision to deny Coles benefits under the Plan because she was not "continuously Disabled through the Elimination Period" (R. 69).[9] Any genuine dispute as to one or more of those factual determinations, if material to LaSalle's

---

[9] Coles suggests (citing Halpin, 962 F.3d at 696) that because LaSalle's original denial was grounded in her lack of objective data supporting disability, while its later denials referred to her failure to be "continuously Disabled" for the duration of the Elimination Period, LaSalle has improperly attempted to change its justification for denial mid-review (R. 199, 135, 069). But unlike the situations in Halpin and in cases triggering the similar "mend the hold" doctrine, here LaSalle's later-offered justification--offering a substantive reason for its denial of Coles' claim (a reason that will be for the ultimate factfinder to evaluate)--was no worse than a logical extension of LaSalle's earlier denial based on a claimed lack of objective evidence.

11

ultimate decision, precludes summary judgment for both parties. And that is the case here, as the ensuing highlighting of a few of those disputes demonstrates.

Was Coles Disabled?

According to Plan at 12, Coles is "Disabled" if she is:

unable to perform all the material duties of [her] Regular Occupation or a Qualified Alternative, even with Reasonable Accommodation....

In that regard Dr. Sweet conducted a battery of tests to assess a range of Coles' skills, including cognitive functioning, learning and memory, emotionality/personality functioning, depression, anxiety and hopelessness (R. 190-94). Ultimately Dr. Sweet reached a dual diagnosis of "Major Depressive Episode, Recurrent, Moderate" and "Cognitive Disorder Not Otherwise Specified" (R. 193). While Coles and LaSalle essentially agree as to the accuracy of those findings, they vigorously dispute how the findings should be interpreted and how the findings relate to the determination whether Coles is disabled or not according to the Plan.

For example, Dr. Sweet concluded from his evaluation that the results indicated that "Ms. Coles would not be very effective at present if she returned to work" (R. 194). Dr. Nutter had earlier (albeit without the benefit of Dr. Sweet's data) reached a similar conclusion that Coles was "unlikely to be able to return to her previous work given its demands both cognitively

12

and emotionally" (R. 217). But he had also noted that he could not ascertain "whether she would be able to return to work in a different environment" at a later date (id.). Dr. Nutter later reiterated his conclusion that it was unlikely Coles would be able to return to work in her previous capacity (R. 123).

On the other hand, looking at the same results, Dr. Abramson concluded that the data did not suggest that Coles could not perform her occupation with a different employer (R. 156). And Dr. Pearlman reached a similar conclusion, determining that Coles' cognitive impairment was the result of anxiety and that despite a finding of moderate depression, her "job-related anxiety" did not rise to a level of incapacitating severity to warrant discontinuing her job entirely (R. 74, 76).

In such circumstances a variety of factors--including the potential biases discussed in Nord as well as the individual qualifications and competencies of each doctor (Nord, 123 S.Ct. at 1971)[10]--might influence whose opinions should carry more weight in the evidentiary balance. Here we have the classic "battle of the experts" that cries out for resolution by a

---

[10] Dr. Sweet repeatedly suggests that Drs. Abramson and Pearlman are incapable of correctly interpreting his findings because they are psychiatrists attempting to analyze psychological data (R. 49, 121). On the other hand, Dr. Pearlman contends that even if psychiatrists are not trained to administer psychological tests, they can still competently interpret them (R. 74). Again that conflict goes to the credibility or weight of the respective doctors' opinions, and as such its resolution is reserved for a factfinder.

13

factfinder (either the court in a bench trial or a jury, as the case may be), not by a court operating within the strictures of Rule 56. As <u>Sarsha v. Sears, Roebuck & Co.</u>, 3 F.3d 1035, 1041 (7th Cir. 1993)(citations omitted) has put it:

> Stripped down, this is a case of one party's word against the other....We cannot resolve the conflict between these two positions without deciding which side to believe. On summary judgment, a court can neither make a credibility determination nor choose between competing inferences. Rather, these are functions for a jury.

<u>Did Coles Satisfy the Elimination Period?</u>

Even if Coles' symptoms qualify her as "Disabled" within the Plan's definition, Plan at 3 specifies that she is entitled to benefits only if she remains continually disabled for the duration of the Elimination Period--90 days.[11] Again the doctors' opinions are all over the map on that score:

>    1. As early as September 25, 2001 Dr. Kolbaba observed that Coles was showing dramatic improvement since she

---

[11] There is some confusion about the length of the Elimination Period. At times LaSalle measures the Elimination Period as 182 days (L. St. ¶9), consistently with the copy of the Plan that LaSalle submitted with its Rule 56.1 Statement. But because the back page of that copy of the Plan indicates it is a June 2002 edition, the Elimination Period listed there is not controlling for Coles' claim (<u>Hackett</u>, 315 F.3d at 774). In contrast, Coles maintains that the Elimination Period is 90 days (C. St. ¶14; Complaint Ex. A) and certain of LaSalle's Rule 56.1 responses are consistent with that (L. Resp. ¶¶11, 14). Moreover, LaSalle's own materials consistently refer to a 90 day Elimination Period (R. 11, 68, 133, 277). This opinion accordingly assumes that the Elimination Period is 90 days, though ultimate resolution of the issue may remain open for decision at trial.

stopped working (R. 362).

2. Dr. Sweet noted in April 2002 that Coles had self-reported that she no longer felt depressed but that since January 2002 she was still experiencing problems with her cognitive functioning (R. 189). But as late as August 2002 Dr. Sweet continued to maintain that he had "no reason to believe that [Coles] was not continuously disabled since leaving her position in September" (R. 122).

3. Dr. Abramson believed that the clinical data supported a diagnosis of major depression from September 5, 2001 to December 4, 2001 but that no psychiatric condition precluded Coles from working after December 4, 2001 (R. 155). That was based in part on Dr. Kolbaba's notation of dramatic improvement (incorrectly ascribed to Dr. Nutter)(id.).

4. But Dr. Nutter asserted in August 2002 that while Coles might have exhibited some improvement, "at no point since October of 2001" had she "experienced remission from her depression" (R. 123).

5. Finally, Dr. Pearlman reached an entirely different conclusion that Coles' depression and anxiety did not even justify a leave of absence from work past September 17, 2001 R. 76).

What is crystal clear from all of that is its lack of

clarity. Even if the parties had agreed that Coles qualitatively falls within the definition of Disabled under the Plan (which they certainly have not), fundamental factual disputes still remain about the duration of her depression or other cognitive impairment that could give rise to long term disability benefits.

## Conclusion

On the one hand, Coles' Rule 56 motion cannot be granted because a de novo review of the record confirms the need to weigh the evidence to determine whether she is or is not entitled to long term disability benefits. On the other hand, LaSalle's motion cannot be granted either for precisely the same reason. As the parties should have known from the outset, the need for Rule 56 purposes to view the evidence in the light most favorable to the nonmovant has doomed both motions. Each is denied.[12]

This action is set for a status hearing at 8:45 a.m. October 28, 2003 to discuss timing and procedures for trial of the case. This Court reserves judgment as to whether any fee shifting may be appropriate under the circumstances leading to this dry run.

_____
Milton I. Shadur
Date: October 17, 2003    Senior United States District Judge

---

[12] That being so, considerations of awarding prejudgment interest or attorney's fees, as well as the debate over the propriety of a "remand" to the Plan Administrator if the evidence ultimately indicates that Coles qualifies for benefits under the Plan, are all premature.

16